# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| SUSAN L. WESSLER-HERRON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 6:14-CV-00840-SLB |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Susan L. Wessler-Herron brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying her application for supplemental security income ["SSI"]. After review of the record, the parties' submissions, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for SSI on October 12, 2010 and later amended her alleged onset date to October 1, 2010. (R. 35, 107.)[1] Plaintiff's application was denied by the Social Security Administration ["SSA"] on March 24, 2011. (R. 64.) Thereafter, plaintiff requested a hearing before an Administrative Law Judge ["ALJ"], which was held on June 14, 2012. (R. 31.) After the hearing, the ALJ found that plaintiff was capable of making a

---

[1] Reference to a document number, ("Doc. __"), refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as ("R.__").

vocational adjustment to other occupations, such as bench/assembler, sorter, and bakery line attendant. (R. 20.)  In light of these findings, the ALJ denied plaintiff's request for SSI on September 18, 2012. (*Id.*)

On September 26, 2012, plaintiff petitioned the Appeals Council to review the ALJ's decision, (R. 5), and on March 21, 2014, the Appeals Council denied plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner of Social Security, (R. 1).  Following denial of review by the Appeals Council, plaintiff filed an appeal in this court on May 5, 2014. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]; rather the court must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are

conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936 F.2d at 1145. "[N]o . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. <u>DISCUSSION</u>

**A.  THE FIVE-STEP EVALUATION**

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for supplemental security income.  *See* 20 C.F.R. § 416.920(a)(1)-(2); *see also Bowen v. City of New York,* 476 U.S. 467, 470 (1986). "The term 'disability' means – (A) [the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 416(i)(1).  The specific steps in the evaluation process are as follows:

3

**1. Substantial Gainful Employment**

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987). The regulations define "substantial gainful activity" as "work activity that is both substantial and gainful."[2] 20 C.F.R. § 416.972. If the claimant is working and that work is substantial gainful activity, the Commissioner will find that the claimant is not disabled, regardless of the claimant's medical condition or her age, education, and work experience. 20 C.F.R. § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged

---

[2] The regulation provides:

> (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.
>
> (b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.
>
> (c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572; 20 C.F.R. § 416.972.

in substantial gainful activity." *Reynolds-Buckley v. Commissioner of Social Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[3]

The ALJ determined that plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 1, 2010. (R. 11.)

**2. Severe Impairments**

If the claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 416.920(c). "An impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work

---

[3] Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it. *Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority*." 11th Cir. R. 36-2 (emphasis added).

experience." *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20 C.F.R. § 416.921(a). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Brown*, 826 F.2d 996, 1001 (11th Cir. 1985); *see also* 20 C.F.R. § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff had severe impairments of "degenerative disc disease, polyarthralgia, chronic obstructive pulmonary disease, depression, and benzodiazepine and opiate dependence." (R. 11.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the durational requirement and whether it is equivalent to any one of the listed impairments, which are impairments that are so severe as to prevent an individual with the described impairment from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of her age, education, and work experience. 20 C.F.R. § 416.920(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (R. 12.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [her] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work. 20 C.F.R. § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it. 20 C.F.R. § 416.960(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find she is not disabled. 20 C.F.R. § 416.920(e). The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff has a high school education and was 50 years old, which is defined as an individual closely approaching advanced age, on the alleged onset date. (R. 19.) The ALJ made the following findings regarding plaintiff's RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . except the claimant would need a sit/stand option. The claimant experiences moderate limitations from her mental impairment, but can understand, and remember simple instructions but not detailed instructions. The claimant can carry out simple instructions and can maintain attention for routine or familiar tasks for extended periods. The claimant can tolerate ordinary work stress, but

> should avoid quick decision-making, rapid changes and multiple demands. The claimant would benefit from regular rest breaks and a slower pace, but is able to maintain a work pace consistent with the mental demands of competitive level work. Feedback should be supportive. The claimant can tolerate casual non-intense interaction with co-workers and supervisors, and can adapt to infrequent well-explained changes regarding the work place and work functions. The claimant can set simple short-term work goals that are realistic, but may need assistance with those that are more complex or long-term. The claimant is likely to miss one to two days of work a month due to mental signs and symptoms.

(R. 14.) The ALJ concluded that plaintiff is unable to perform any of her past relevant work.

(R. 19.)

## 5. Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant – in light of her RFC, age, education, and work experience – is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 F. App'x at 863; *see also* 20 C.F.R. § 416.920(c)(1). The regulations provide:

> If we find that your residual functional capacity is not enough to enable you to do any of your past relevant work, we will use the same residual functional capacity assessment we used to decide if you could do your past relevant work when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and your vocational factors of age, education, and work experience. Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 416.960(c)(1).

The ALJ consulted a Vocational Expert ["VE"] to determine whether jobs exist in the national economy that plaintiff could perform, considering her RFC, age, education, and work experience. The VE testified that an individual with plaintiff's limitations and vocational factors could perform the jobs of bench/assembler, sorter, and bakery line attendant, which are jobs that exist in significant numbers in Alabama and in the national economy. (R. 20, 48.) Because the ALJ found that jobs consistent with plaintiff's RFC and vocational factors exist in significant numbers, the ALJ found that plaintiff was not disabled. (R. 20.)

**B. MS. WESSLER-HERRON'S ISSUES ON APPEAL**

Plaintiff argues that (1) the ALJ failed to assign proper weight to the medical opinion of Dr. Scottie Twilley and failed to consider the medical evidence of record; (2) the ALJ improperly discredited plaintiff's pain testimony; and (3) the ALJ failed to address the combined effects of plaintiff's impairments. (Doc. 11 at 22.) Having reviewed the entire record before the ALJ, as well as the parties' briefs, the court finds that the Commissioner's decision is due to be affirmed.

### 1. MEDICAL EVIDENCE AND EXPERT MEDICAL OPINION

Plaintiff contends that the ALJ improperly discounted the medical opinion of Dr. Scottie Twilley, plaintiff's treating physician, and that the objective medical evidence of record confirms that plaintiff is disabled. (Doc. 11 at 11, 18.) The regulations provide

9

specific criteria for evaluating medical opinions from acceptable medical sources: (1) examining relationship; (2) treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) "other factors."[4] *See* C.F. R. § 404.1527(c). "The law is clear that, although the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. Unit B Nov. 1981) (citing 20 C.F.R. § 404.1526).

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987) (per curiam)). "An acceptable medical opinion as to disability must contain more than a mere conclusory

---

[4] With regard to "other factors," the regulation states:

> When we consider how much weight to give to a medical opinion, we will also consider any factors you or others bring to our attention, or of which we are aware, which tend to support or contradict the opinion. For example, the amount of understanding of our disability programs and their evidentiary requirements that an acceptable medical source has, regardless of the source of that understanding, and the extent to which an acceptable medical source is familiar with the other information in your case record are relevant factors that we will consider in deciding the weight to give to a medical opinion.

20 C.F.R. § 404.1527(c)(6).

statement that the claimant is disabled. It must be supported by clinical or laboratory findings." *Oldham*, 660 F.2d at 1084. Accordingly, with good cause, the ALJ may disregard a treating physician's opinion "but [he] 'must clearly articulate [the] reasons for doing so,'" because "[i]n the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir.1981)).

Plaintiff contends that the ALJ substituted his opinion for that of Dr. Twilley by rejecting Dr. Twilley's testimony that plaintiff "may have early signs of ankylosing spondylitis." (R. 16; *see* R. 329.) Dr. Twilley testified that plaintiff had "early findings that would warrant us to think in her thoracic and lumbar regions that she perhaps does have ankylosing spondylitis." (R. 329.) Dr. Twilley also testified that AS is a "100% disabling illness" and "one of the worst conditions that I have seen in my practice for pain." (R. 333.) The ALJ considered Dr. Twilley testimony that plaintiff may be developing ankylosing spondylitis ("AS"),[5] but stated that the evidence does not support Dr. Twilley's statement. (R. 16.) The ALJ questioned Dr. Twilley's diagnosis because, while the records support plaintiff's diagnosis for degenerative disc disease in the cervical and lumbar spine, "Dr.

---

[5] As defined in the Commissioner's brief, AS is "a long-term type of arthritis that most commonly causes inflammation in the bones and joints at the base of the spine where it connects with the pelvis; over time, the affected spinal bones join together." (Doc. 13 at 4 (citing *Ankylosing Spondylitis*, PUBMED HEALTH, http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0024407/ (last visited July 16, 2015)).

Twilley's notes do not appear to show a diagnosis of ankylosing spondylitis, or even a reference to [AS]." (*Id.*) Plaintiff tested positive for HLA-B27 in June 2010, (R. 271), and Dr. Twilley testified that patients with AS frequently test positive HLA-B27, (R. 329).[6] However, Dr. Twilley did not document in medical records how plaintiff's blood test results were consistent with AS or note the condition anywhere in plaintiff's treatment records. (R. 16.) Additionally, the available imaging records show mild degenerative changes in plaintiff's spine but do not show vertebral fusion apart from a surgical fusion that took place in 2001. (R. 195, 289, 263, 275.) The ALJ properly stated his reasons for discounting Dr. Twilley's testimony regarding plaintiff's alleged impairment of AS.

Plaintiff also contends "the ALJ dismissed the diagnoses and opinions of Dr. Twilley without explaining his justification in doing so." (Doc. 11 at 20.) However, the ALJ did not completely reject Dr. Twilley's diagnoses and opinions. The ALJ found that Dr. Twilley's notes "confirm objective findings of pain in the neck, back, and extremities with range of motion, as well as a diagnosis of chronic musculoskeletal pain and degenerative disc disease." (R. 16.) To the extent the ALJ did not accept Dr. Twilley's testimony, he provided an adequate justification. For example, Dr. Twilley's notes repeatedly report that plaintiff's pain was controlled with medication, thereby providing substantial evidence upon which the ALJ could base his finding that plaintiff's pain was not as limiting as alleged. (*See* R. 16,

---

[6] As the Commissioner notes, the link between AS patients frequently testing positive for HLA-B27 does not translate into HLA-B27 patients frequently developing AS. (Doc. 13 at 4-5 n.5.)

353, 357, 361, 365, 369, 373, 377, 381, 389.) The ALJ did not err in finding that Dr. Twilley's conclusory opinions regarding the extent of plaintiff's restrictions and limitations are not supported by his treatment notes or other medical records.

Plaintiff next argues that the ALJ ignored the objective medical evidence, including x-rays, blood tests, and physical exams showing that plaintiff suffers from a disability. (Doc. 11 at 11-12.) The ALJ considered the x-ray records of Dr. Salah Uddin, a neurologist who evaluated plaintiff for chronic back pain. (R. 16.) After reviewing plaintiff's x-rays during a follow-up visit in June 2010, Dr. Uddin noted that plaintiff's "back pain is also a lot better" and that plaintiff was taking medication "three times a day with good control of her low back pain." (R. 275.) The ALJ considered Dr. Uddin's findings, stating that the "x-ray records from Dr. Uddin show only mild degenerative disc disease at L4-5 and L5-S1 with mild facet degenerative joint disease also observed at these levels with no mention of Ankylosing Spondylitis, or vertebrae fusion, which is usually a symptom of this impairment." (R. at 16.) Additionally, contrary to plaintiff's argument that the ALJ did not consider her 2001 spinal surgery, (*see* Doc. 11 at 14), the ALJ stated that plaintiff's medical history includes "an anterior cervical fusion with bone graft and plating in January 2001. Records show that the claimant's surgery was successful[,] and she fully recovered despite failure to complete physical therapy." (R. 15.) The court finds that the ALJ properly considered the objective medical evidence of record.

### 2. THE ALJ'S CREDIBILITY DETERMINATION

Plaintiff contends that the ALJ erred in discrediting her pain testimony. (Doc. 11 at 14.) Specifically, plaintiff challenges the ALJ's finding that her "allegations of severe pain and functional limitations related to back and neck pain [are] not fully supported by the evidence." (*Id.* (quoting R. 15).) Social Security Ruling 96-7p explains the two step process set out in 20 C.F.R. § 404.1529 and § 416.929 that the ALJ must follow:[7] "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms." This determination does not consider the "intensity, persistence, or functionally limiting effects of the individual's symptoms." SSR 96-7p. If the ALJ finds that the plaintiff's case survives the first step, then

> the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or

---

[7] Apparently the Eleventh Circuit considers the standard set out in the regulations and the standard in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), as one and the same. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("Furthermore, the ALJ cites to 20 C.F.R.§ 404.1529, which contains the same language [as *Holt*] regarding the subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard. In citing to § 404.1529 and based on the findings and discussion, it is clear that the ALJ applied this Circuit's pain standard [from *Holt*]."). Because SSR 96-7p offers an in-depth explanation of the regulations and is more recent than *Holt*, the court looks to it for guidance.

>     functionally limiting effects of pain or other symptoms are not
>     substantiated by objective medical evidence, the adjudicator
>     must make a finding on the credibility of the individual's
>     statements based on a consideration of the entire case record.

SSR 96-7p.

The ALJ found that, under step one, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but under step two, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 15.) In reaching this finding, the ALJ relied in part on the inconsistencies between plaintiff's testimony at the hearing and her statements in the Function Report. (R. 17.) According to plaintiff's Function Report completed in October 2010, she fed her daughter's dogs, helped care for her infant granddaughter every day, and drove to the grocery store once a week. (R. 141-144.) However, during the ALJ hearing, plaintiff testified that she does not provide daycare for her grandchild or do her own grocery shopping. (R. 39-40.)

The ALJ also considered plaintiff's testimony during the ALJ hearing that she had undergone all recommended treatments from her doctors. (R. 37.) The ALJ asked plaintiff if any doctors had recommended treatment that plaintiff had not received, and she responded that none had. (*Id.*) However, the record does not show that plaintiff ever received trigger point injections or attended disc decompression therapy ordered by her neurologist, Dr.

Uddin, in June 2010. (*See* R. 275.) Furthermore, the ALJ noted that, despite plaintiff's testimony that she experiences "constant pain," (R. 36), the record contains multiple reports stating that medication was controlling plaintiff's pain. (R. 16, 353, 357, 361, 365, 369, 373, 377, 381, 389.) The ALJ did not err in finding that plaintiff's subjective reports of her limitations were inconsistent with medical evidence and not supported by the record as a whole. (R. 18.)

### 3. COMBINATION OF IMPAIRMENTS

Lastly, plaintiff contends that the ALJ failed to address the combination of her mental and physical impairments. (Doc. 11 at 18, 22.) The ALJ found plaintiff had severe impairments of degenerative disc disease, polyarthralgia, chronic obstructive pulmonary disease, depression, and benzodiazepine and opiate dependence. (R. 11.) The ALJ determined that "the claimant's mental impairments impose more than a mild degree of limitation in at least one of the first three broad areas of functioning," but found that plaintiff's impairments, considered singly and in combination, did not meet or medically equal the severity of the listings in 20 C.F.R. pt. 404, Subpart P Appendix 1. (R. 11-12.) The ALJ's determination constitutes evidence that he considered the combined effects of plaintiff's impairments. *See Jones v. Dept. of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991) (finding that the ALJ considered the combined effects of the claimant's impairments where the ALJ determined that the plaintiff did not have "an

impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4") (emphasis in original).

The ALJ's RFC assessment also shows that he considered the combined effects of plaintiff's impairments because the RFC findings include provisions accommodating plaintiff's back pain and depression. For example, the RFC assessment provides for light work with a sit/stand option; avoidance of quick decision-making, rapid changes, and multiple demands; regular breaks and a slower pace; supportive feedback; and assistance with forming more complex or long-term work goals. (R. 14, 18.) The court finds that the ALJ assessed plaintiff's impairments, both singly and in combination.

## IV. CONCLUSION

For the reasons set forth above, the decision of the Commissioner is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 20th day of July, 2015.

*Sharon Lovelace Blackburn*
_____
SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE